KILAUEA NEIGHBORHOOD ASSOCIATION, Plaintiff-Appellant, *v.* THE LAND USE COMMISSION OF THE STATE OF HAWAII, FOSTER PETROLEUM CORPORATION, THE STATE OF HAWAII DEPARTMENT OF PLANNING AND ECONOMIC DEVELOPMENT, THE COUNTY OF KAUAI PLANNING DEPARTMENT, Defendants-Appellees

NO. 11884

(CIVIL NO. 85-0212)

MARCH 11, 1988

BURNS, C.J., HEEN J., AND
CIRCUIT JUDGE PHILIP T. CHUN
IN PLACE OF ASSOCIATE JUDGE TANAKA, EXCUSED

228

OPINION OF THE COURT BY HEEN, J.

Appellant Kilauea Neighborhood Association (Kilauea) appeals from the November 14, 1986 circuit court judgment which affirms Defendant State of Hawaii Land Use Commission's (LUC) December 2, 1985 Findings of Fact, Conclusions of Law, Decision and Order (Decision), reclassifying 15 acres of land in Kilauea, Kauai, from agricultural to urban.[1]

Kilauea contends that the circuit court erred (1) in holding that the findings of fact of the LUC were not clearly erroneous; and (2) in denying its motion for leave to present additional evidence. We affirm.

---

[1] The County of Kauai Planning Department (County) and the State of Hawaii Department of Planning and Economic Development (DPED) were made parties to the proceeding pursuant to Hawaii Revised Statutes (HRS) § 205-4(e) (1). DPED joined in the brief of the Land Use Commission. County's motion to join LUC's answering brief was approved by the supreme court.

I.

On July 9, 1984, Appellee Foster Petroleum Corporation (Foster) filed a petition pursuant to Hawaii Revised Statutes (HRS) § 205-4 (1976) with the LUC to reclassify approximately 28 acres of land in Kilauea from agricultural to urban. Foster proposes to develop the land for light industrial use. The property covered by the application consists of a parcel of approximately 25 acres (Site One) and a smaller separate 3-acre parcel (Site Two) which was proposed as a buffer zone between Site One and the town of Kilauea. Kilauea was allowed to intervene in the proceedings.

The Decision, which approved reclassification for only 15 acres in Site One, and denied reclassification for the remainder of Site One and all of Site Two, consists of 41 numbered findings of fact and a section titled "Conclusions of Law" containing two unnumbered paragraphs.

Kilauea appealed to the fifth circuit court and there filed a motion for leave to present additional evidence to the LUC. The motion was denied and the circuit court affirmed the Decision. Kilauea appealed.

II.

The standard of review of an administrative agency's decision is set forth in HRS § 91-14 (1985). Our review of the circuit court judgment regarding the agency's decision is governed by the same standards. *Protect Ala Wai Skyline v. Land Use and Control*, 6 Haw. App. ____, 735 P.2d 950 (1987). An agency's findings of fact are reviewable for clear error, while its conclusions of law are freely reviewable. *Id.* The question whether an agency's determination is a finding of fact or a conclusion of law is a question of law. Thus, the accuracy of the label affixed by the agency is freely reviewable by reviewing courts. *See Molokoa Village Development Co., Ltd. v. Kauai Electric Co., Ltd.*, 60 Haw. 582, 593 P.2d 375 (1979). An agency's findings are not clearly erroneous and will be upheld if supported by reliable, probative and substantial evidence, *In re Application of Kaanapali Water Corp.*, 5 Haw. App. 71, 678 P.2d 584 (1984), unless the reviewing court is left with a firm and definite

conviction that a mistake has been made. *Wailuku Sugar Co. v. Ag-salud,* 65 Haw. 146, 648 P.2d 1107 (1982). Our review is further subject to the principle that an agency's decision carries a presumption of validity, and the appellant has the heavy burden of making a convincing showing that the decision is invalid because it is unjust and unreasonable in its consequences. *Williams v. Hawaii Housing Authority,* 5 Haw. App. 325, 690 P.2d 285 (1984). An agency's findings must be sufficient to allow the reviewing court to track the steps by which the agency reached its decision. *See Nani Koolau Co. v. K & M Construction, Inc.,* 5 Haw. App. 137, 681 P.2d 580 (1984).

The question here is whether the LUC's findings of fact and conclusions of law indicate that the Decision meets the requirements of HRS chapter 205 (1976).[2]

We must determine, first, precisely what findings of fact are required to be made by the LUC.

### III.

HRS § 205-4 (1976) sets forth the procedures to be followed in amending district boundaries. Under § 205-4(g), the LUC is required to file findings of fact and conclusions of law when acting upon a petition for reclassification. HRS § 205-4(h) provides:

(h) No amendment of a land use district boundary shall be approved unless the commission finds upon the clear preponderance of the evidence that the proposed boundary is reasonable, not violative of section 205-2 and consistent with the interim policies and criteria established pursuant to section 205-16.1, or any state plan enacted by the legislature which plan shall supersede any interim guidance policies.[3] [Footnote added.]

Pending enactment of the state plan, the legislature adopted an interim land use guidance policy in HRS § 205-16.1 (Supp. 1984), and provided that in making any land use district boundary

---

[2] We note that HRS chapter 205 was amended subsequent to the LUC hearings in this matter, but prior to the date of the Decision. In our review, we apply the provisions of chapter 205 as they existed at the time of the hearings. HRS §§ 1-3 and -10 (1985); *Clark v. Cassidy,* 64 Haw. 74, 77 n.6, 636 P.2d 1344, 1346 n.6 (1981).

[3] Conformity with the state plan is also required by HRS § 205-16 (1976).

changes the LUC "shall observe and comply" with those policies.[4] The interim policies established in § 205-16.1 are:

(1) Land use amendment shall be approved only as reasonably necessary to accommodate growth and development, provided there are no significant adverse effects upon agricultural, natural, environmental, recreational, scenic, historic, or other resources of the area.

(2) Lands to be reclassified as an urban district shall have adequate public services and facilities or as can be so provided at reasonable costs to the petitioner.

(3) Maximum use shall be made of existing services and facilities, and scattered urban development shall be avoided.

(4) Urban districts shall be contiguous to an existing urban district or shall constitute all or a part of a self-contained urban center.

(5) Preference shall be given to amendment petitions which will provide permanent employment, or needed housing accessible to existing or proposed employment centers, or assist in providing a balanced housing supply for all economic and social groups.

(6) In establishing the boundaries of the districts in each county, the commission shall give consideration to the general plan of the county.

(7) Insofar as practicable conservation lands shall not be reclassified as urban lands.

(8) The commission is encouraged to reclassify urban lands which are incompatible with the interim statewide land use guidance policy or are not developed in a timely manner.[5] [Footnote added.]

---

[4] The state plan was enacted on May 22, 1978. Act 100, 1978 Haw. Sess. Laws 136-163. Part I of the plan, relating to the overall theme, goals, objectives and policies of the plan, and Part II, relating to planning, coordination and implementation, became effective on May 22, 1978. Part III of the plan, relating to "priority directions" became effective on May 1, 1979. *Id.*, § 4.

[5] HRS § 205-16.1 was repealed in 1985. Act 230, § 6, 1985 Haw. Sess. Laws 417, 420.

Thus, § 205-4(h) emphatically directs the LUC that in order to make a boundary change it must specifically find that the change is reasonable, is not violative of the provisions of § 205-2, and is consistent with the policies and criteria in § 205-16.1. Clearly those findings are essential and fundamental to the Decision. Additionally, in order to allow this court to track the steps by which the LUC reached its finding that a land use boundary amendment complies with the provisions of § 205-16.1, we deem it necessary for the LUC to make findings on the pertinent criteria established there. Such findings are subsidiary findings of basic facts and are necessary to support the ultimate finding that the criteria of § 205-16.1 have been met. *Hawaii Public Employment Relations Board v. United Public Workers*, 66 Haw. 461, 667 P.2d 783 (1983).

In our view, § 205-4(h)'s requirement that the LUC find that the reclassification is not violative of § 205-2 presents a different situation. The provisions of HRS § 205-2 are far more general in nature and do not lend themselves to the more precise findings required to show compliance with § 205-16.1. Therefore, the broad finding of non-violation of § 205-2 would satisfy § 205-4(h)'s requirement in that regard. We turn now to the Decision itself.

IV.

Kilauea argues that many of the LUC's findings of fact are merely recapitulations of the evidence,[6] and that the findings of fact are insufficient to support the reclassification. As a general rule, mere recapitulations of evidence do not constitute findings of

---

[6] The LUC's "findings of fact" nos. 11, 12, 13, 14, 19, 20, 22, 23, 25, 26, 27, 34, 35, 36 and 38 are merely summaries or descriptions of evidence considered by the agency. Additionally, except for the finding that "[t]he Property is not presently being used for agricultural purposes[,]" nearly all of "finding" no. 21 is only descriptive of evidence.

fact. *Mitchell v. BWK Joint Venture*, 57 Haw. 535, 560 P.2d 1292 (1977). But

> [w]here an appellant alleges that the trial court failed to make adequate findings of fact, the appellate court will examine all the findings, as made, to determine whether they are (1) supported by the evidence; and (2) sufficiently comprehensive and pertinent to the issues in the case to form a basis for the conclusions of law.

*Nani Koolau Co. v. K & M Construction, Inc.*, 5 Haw. App. 137, 140, 681 P.2d 580, 584 (1984). Our examination of the record indicates that, although poorly drawn, there are sufficient findings to support the Decision.

The "meat" of the Decision is contained in paragraph 39 under the heading "COMPLIANCE WITH STANDARDS FOR DETERMINING DISTRICTS BOUNDARIES." Paragraph 39 and the ensuing conclusions of law read as follows:

> 39. The Property conforms to the standards for reclassification into the Urban District in that:
>
> a. The Property is in the vicinity of the Kilauea Town, a community characterized by "city-like" concentrations of people, structures, streets, urban level of services and other related land uses.
>
> b. Petitioner has substantiated the market demand for a portion of its proposed industrial development.
>
> c. Petitioner has the financial capacity to undertake and complete the proposed development.
>
> d. The Property is near basic services such as electric and phone utilities and police and fire protection.
>
> e. Petitioner will make sewage disposal and water systems available to the Property.
>
> f. The Property has satisfactory topography and drainage, and is reasonably free from the danger of floods, tsunami, unstable soil conditions, and other adverse environmental effects.
>
> g. Although County general plans do not indicate the Property for industrial development, the economic

need for additional industrial lands outweigh existing planning considerations.

h. The Property will not contribute towards scattered spot urban development and will not require an unreasonable investment in public supportive services.

i. In order to minimize the impact of the proposed development on the aesthetic quality of the area, Petitioner proposes to construct a landscape buffer around Site One and along Site Two to mitigate adverse visual impacts of the development from Kuhio Highway.

### CONCLUSIONS OF LAW

Pursuant to Chapter 205, Hawaii Revised Statutes, as amended, and the Rules of Practice and Procedure and District Regulations of the State Land Use Commission, the Commission finds upon a preponderance of the evidence that the reclassification of a portion of Site One of the Property, being approximately 15.0 acres located in Kilauea, Island and County of Kauai, State of Hawaii, Tax Map Key 5-2-05: portion of parcel 23, from the Agricultural District to the Urban District for light industrial use conforms to the standards established in the State Land Use District Regulations, is reasonable and non-violative of Section 205-2, Hawaii Revised Statutes, as amended, and is consistent with the Hawaii State Plan, Chapter 226, Hawaii Revised Statutes, as amended.

The Commission also concludes that the reclassification of the remaining balance of 10 acres in Site One, and 3 acres in Site Two, has not been shown to be reasonably necessary at this time, does not conform to the State Land Use District Regulations, and is violative of Section 205-2, Hawaii Revised Statutes, as amended.

Close examination of paragraph 39's provisions reveals that they are findings of fact related to the criteria of § 205-16.1, and satisfy § 205-4's requirement that the land use boundary change be consistent with the policies and criteria of § 205-16.1. The subparagraphs of paragraph 39 correspond to the pertinent criteria of

§ 205-16.1 as follows:

| subparagraph | criteria of § 205-16.1[7] |
|:---:|:---:|
| a. | (4) |
| b. | (1) |
| c. | (2) & (5) |
| d. | (2) & (3) |
| e. | (3) |
| f. | (1) |
| g. | (1) & (6) |
| h. | (3) |
| i. | (1) |

Additionally, the first paragraph of the "Conclusions of Law" section of the Decision contains a clear statement by the LUC that the land use change is reasonable, does not violate § 205-2, and is consistent with the state plan. Although called conclusions of law by the LUC, those statements satisfy the requirement of § 205-4(h) that such findings be made.

The evidence in the record supports the findings of fact and the Decision to reclassify 15 acres of Site One from Agricultural to Urban for light industrial development, and we are not convinced that a mistake has been made.

Kilauea's argument that there is no finding to support the limitation of the reclassification to 15 acres is without merit. In the second paragraph of its conclusions of law the LUC found that reclassification of the remaining ten acres in Site One and the three acres in Site Two were not "shown to be reasonably necessary at this time[.]" Although included among the conclusions of law that statement, too, is really a mislabelled finding of fact.

V.

Kilauea complains that the LUC did not "cite" the County's proposed finding that only 5 acres should be redistricted. However, that proposed finding was disposed of in the LUC's general denial of all proposed findings not otherwise adopted or rejected

---

[7] Criteria (7) and (8) of § 205-16.1 are not pertinent to the petition or the Decision.

by the Decision. *Outdoor Circle v. Harold K.L. Castle Trust Estate,* 4 Haw. App. 633, 675 P.2d 784 (1983).

## VI.

Kilauea's contention that the circuit court erred in denying its motion for leave to present additional evidence to the LUC in the form of a Kauai County ordinance adopted after the hearings in this case were closed, and which established an industrial zone in the Princeville area, is without merit.

Judicial review of an agency decision is confined to the record of the agency proceedings. HRS § 91-14(f) (1985);[8] *McGlone v. Inaba,* 64 Haw. 27, 636 P.2d 158 (1981). Under HRS § 91-14(e),[9] the court may order that "additional evidence be taken before the agency upon such conditions as the court deems proper[;]" however, the court is not obligated to do so. The decision is purely discretionary. We find no abuse of discretion in the lower court's refusal to grant Kilauea's motion. *McGlone v. Inaba, supra.* The County of Kauai participated in the hearings before the LUC and presented its objection. Essentially, the County's objection was that the boundary change did not comport with the County's general plan proposals for the north shore area of Kauai where Kilauea is located.[10] The ordinance in question, which we assume complies

---

[8] HRS § 91-14(f) also provides that "in the cases where a trial de novo, including trial by jury, is provided by law and also in cases of alleged irregularities in procedure before the agency not shown in the record, testimony thereon may be taken in court." Kilauea does not argue that the provision applies.

[9] HRS § 91-14(e) reads:

(e) If, before the date set for hearing, application is made to the court for leave to present additional evidence material to the issue in the case, and it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the agency, the court may order that the additional evidence be taken before the agency upon such conditions as the court deems proper. The agency may modify its findings, decision, and order by reason of the additional evidence and shall file with the reviewing court, to become a part of the record, the additional evidence, together with any modifications or new findings or decision.

[10] In the circuit court the County filed a brief urging affirmance of the Decision and in this appeal joined in LUC's answering brief. It appears that County no longer objects to the reclassification.

with Kauai's general plan, merely constitutes further evidence in support of the County's position at the hearings. The fact that the ordinance was adopted after the hearings were closed would not affect the Decision.

Affirmed.

*Donald H. Wilson (Stephen A. Levine* with him on the briefs) for appellant Kilauea.

*Clinton I. Shiraishi (Shiraishi & Yamada,* of counsel) for appellee Foster.

*Benjamin M. Matsubara (Edsel M. Yamada* with him on the briefs; *Ukishima, Matsubara, Lee & Kotake,* of counsel) for appellee LUC.

Joinders on the answering brief:

*Everett S. Kaneshige,* Deputy Attorney General, for appellee Department of Planning & Economic Development.

*Lorna A. Nishimitsu,* Deputy County Attorney, for appellee County of Kauai Planning Department.